698 So.2d 711 (1997)
Bernis BOSSIER, Jr., et al., Plaintiff-Appellant,
v.
Marco A. RAMOS, M.D., Defendant-Appellee.
No. 29766-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1997.
Rehearing Denied September 18, 1997.
*712 Nelson, Hammons & Self by John L. Hammons, Shreveport, for Plaintiff-Appellant.
Pugh, Pugh & Pugh by Robert G. Pugh, Jr., Shreveport, for Defendant-Appellee.
Before MARVIN, C.J., and BROWN and WILLIAMS, JJ.
WILLIAMS, Judge.
The plaintiffs, Bernis and Duane Bossier, appeal a judgment in favor of the defendant, Marco Ramos, M.D. The trial court sustained defendant's exception of prescription, finding that as of September 5, 1990, the plaintiffs were aware of facts suggesting improper medical treatment and had unreasonably failed to file a petition within one year from that date. For the following reasons, we affirm.

FACTS
On December 14, 1988, the plaintiff, Bernis Bossier, injured his back while working at Southwest Canners in Nacogdoches, Texas. The company physician examined plaintiff and referred him to Dr. Edwin Ferren, an orthopedist, who prescribed physical therapy at the Nacogdoches Physical Excellence Center. On May 19, 1989, plaintiff underwent an MRI, which showed decreased signal intensity of the L5 intervertebral disc compatible with degeneration and a mild central herniation at L5-S1.
In August 1989, plaintiff saw the defendant, Dr. Marco Ramos, a neurosurgeon, and they discussed disc surgery. Dr. Ramos wrote a letter to plaintiff's insurer recommending surgical intervention at L5-S1. On August 15, 1989, plaintiff was admitted to Willis-Knighton Medical Center with a diagnosis of a herniated nucleus pulposus at L4-L5, in contrast to the initially diagnosed herniation at the L5-S1 space. Dr. Ramos surgically removed disc material at the L4-L5 interspace, a procedure which differed from his prior recommendation to the insurer. In the discharge summary, Dr. Ramos wrote that a CT scan of the patient had revealed a herniated disc at L4-L5. However, a CT scan had not been performed on plaintiff.
Between August 15, 1989, and July 25, 1990, Dr. Ramos wrote several letters to the plaintiff's insurance carrier referring to the surgery at L4-L5 and noting his continued complaints of severe low back pain. Plaintiff did not receive copies of these letters. After his pain had persisted for approximately one year, plaintiff reviewed his medical records and noticed Dr. Ramos' statement in the discharge summary that he had performed surgery at the L4-L5 area based on a previous CT scan. In his deposition, plaintiff stated that at the time, he "knew there was something wrong," because he had been told previously that his problem involved the L5-S1 interspace, and a CT scan had not been performed.
On September 5, 1990, plaintiff wrote a letter to Dr. Ramos requesting another MRI, which subsequently showed that disc material had been removed from the L4-L5 level, with degeneration and continued bulging at L4-L5 and epidural fibrosis at the L5-S1 disc space. After the MRI report was prepared, plaintiff asked Dr. Ramos why the report indicated surgery at L4-L5 rather than L5-S1. Dr. Ramos explained that he initially explored L5-S1 and did not find evidence of a herniation, but while checking the L4-L5 interspace, he found and removed a large herniated disc. Plaintiff continued to see Dr. Ramos for postoperative treatment until his last visit on June 20, 1991. Later *713 that year, he saw Dr. Selby in Dallas, Texas to obtain refills of prescription pain medications.
In March 1992, plaintiff sought a second medical opinion from Dr. Paul Geibel, a spine specialist in San Antonio, Texas. Dr. Geibel informed him that the damaged disc at L5-S1 had not been removed by the previous surgery. On June 15, 1992, approximately three months later, the plaintiff and his wife filed a claim with the Louisiana Patients' Compensation Fund and a medical review panel was convened. Two members of the panel concluded that Dr. Ramos met the standard of care, but the third member disagreed.
Plaintiffs filed this action for damages alleging that defendant's medical malpractice caused their injuries. Defendant answered and filed a peremptory exception of prescription. The trial judge took the matter under advisement without a hearing. Subsequently, the trial court rendered a judgment sustaining the exception of prescription, finding that as of September 5, 1990, plaintiffs knew of facts strongly suggesting improper treatment by the defendant, that the defendant had not attempted to mislead plaintiffs, and that plaintiffs unreasonably failed to file a petition within one year from the date their cause of action was known or "reasonably knowable." The plaintiffs appeal.

DISCUSSION
The plaintiffs contend the trial court erred in sustaining the defendant's exception of prescription and in finding that Dr. Ramos did not attempt to mislead Bernis Bossier. Plaintiffs argue that prescription was suspended because the defendant concealed the fact that he had performed surgery at the L4-5 interspace, preventing them from learning of the alleged negligence until March 1992.
The statute creating time limits for medical malpractice actions is LSAR.S. 9:5628, and it provides in pertinent part:
A. No action for damages for injury or death against any physician * * * whether based upon tort, breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
Despite the statutory time limits of LSA-R.S. 9:5628, our Louisiana jurisprudence has recognized a limited exception founded upon the civilian doctrine of contra non valentem agere nulla currit praescriptio (Prescription does not run against a person who is unable to act). Chaney v. State Dept. of Health, 432 So.2d 256 (La.1983). The doctrine suspends prescription when the defendant engages in conduct which prevents the plaintiff from availing himself of judicial remedies. Whitnell v. Menville, 540 So.2d 304 (La.1989).
Here, Duane Bossier stated that following the surgery, Dr. Ramos came to her husband's hospital room and "explained what he did to the disc." She could not recall whether Dr. Ramos specified the particular disc level involved in the surgery. From this evidence, the trial court could reasonably have found that the defendant did not attempt to mislead or conceal information about the operation.
Even if we assumed that defendant concealed information concerning the location of the surgery from the plaintiffs, Bossier acknowledged that before September 1990, he had discovered that surgery was performed at the L4-5 level, contrary to preoperative information that his problem involved the L5-S1 interspace. To the extent that defendant's assumed concealment prevented Bossier from bringing an action, this impediment was removed in September 1990, when he learned of the actual location of the surgery. Plaintiffs' argument lacks merit.
The plaintiffs contend the trial court was clearly wrong in finding that Bossier failed to bring his action within one year from the time he knew or reasonably should have known of the alleged malpractice. Plaintiffs argue that their petition was filed timely *714 because prescription did not begin to run until March 1992, when they were informed of defendant's negligence.
A medical malpractice action must be filed within one year from the date of the alleged act, omission or neglect or within one year from the date of discovery of the alleged act, omission or neglect. LSA-R.S. 9:5628(A). The one-year prescriptive period begins to run when the patient discovers, or should have discovered, the facts upon which the cause of action is based. Constructive knowledge sufficient to commence the running of prescription requires more than a mere apprehension that something might be wrong. Griffin v. Kinberger, 507 So.2d 821 (La.1987); Harlan v. Roberts, 565 So.2d 482 (La.App. 2d Cir.), writ denied, 567 So.2d 1126 (La.1990).
In determining whether a plaintiff had knowledge of a potential claim at a particular time, we must look to the reasonableness of the patient's inaction. Prescription does not run so long as it is reasonable for a patient not to recognize that the undesirable condition may be related to treatment. When a patient has knowledge of facts strongly suggestive that his condition may be the result of improper treatment, and the physician has not attempted to conceal information which is available to the patient through inquiry, then the facts and cause of action are reasonably knowable. A patient's inaction for more than one year under these circumstances is unreasonable. Harlan v. Roberts, supra.
In the present case, evidence in the record demonstrates Bernis Bossier's actual or constructive knowledge that surgery was performed at the wrong level. Bossier testified during his deposition that prior to September 1990, while reviewing his medical records in an attempt to learn why his back pain persisted a year after his August 1989 operation, he found a discharge summary in which Dr. Ramos had written that surgery was performed at the L4-L5 level. Bossier realized that this information contradicted the preoperative diagnosis of a herniated disc at the L5-S1 interspace. Referring to this discovery, Bossier stated:
I was reading through the medical records and I noticed that ... he had performed surgery at L4-L5 based on a previous CT scan.... [W]hen I found that paper that said L4-L5, and all along everybody since the MRI had said L5-S1. And then when he said a previous CT scan, I knew that I hadn't had a CT scan. I knew there was something wrong.
R.pp. 51-52.
According to Bossier, he discussed this discrepancy with his worker's compensation attorney. Subsequently, in a letter dated September 5, 1990, Bossier asked Dr. Ramos to order a second MRI, which indicated an existing L5-S1 disc problem and showed the surgical intervention at the L4-L5 interspace.
In addition, Duane Bossier testified by deposition that when she saw the reference to L4-L5 surgery in the medical records, it appeared to her that Dr. Ramos had "operated at the wrong place." Mrs. Bossier acknowledged that at the time, she was concerned a mistake had been made.
Plaintiffs further contend that although they learned that the surgery was performed at a different level than had been previously discussed, they did not discover until March 1992 that defendant had failed to remove the herniated disc. However, the September 1990 MRI, which was requested by Bossier, indicated that the L5-S1 interspace problem had not been treated. Thus, the foregoing evidence shows that the medical information known by plaintiffs in March 1992 was essentially the same as that available in September 1990. In fact, Bossier stated that Dr. Geibel "confirmed my belief that surgery was performed at the wrong level." The plaintiffs' contention lacks merit.
Plaintiffs argue that because the defendant continued to provide negligent medical treatment to Bossier following the surgery, prescription could not begin to run until his last visit with Dr. Ramos on June 20, 1991. As we have previously noted, pursuant to R.S. 9:5628, the prescriptive period begins to run when the patient discovers or should have discovered the facts upon which the cause of action is based. Thus, the duration of a patient's medical care is only one of several *715 factors relevant to the issue of whether the plaintiff's inaction was reasonable under the circumstances. Therefore, the date of a patient's last visit with the physician is not necessarily the controlling date for commencement of prescription in a medical malpractice action. Plaintiffs' argument lacks merit.
Here, the trial court considered the deposition testimony of the plaintiffs in reaching its factual conclusions. An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, 617 So.2d 880 (La.1993). The plaintiffs' deposition testimony and Bossier's acts of searching his medical records, contacting an attorney, and requesting a second MRI demonstrate that he possessed more than a mere apprehension that his back pain might relate to improper treatment. After reviewing the record, we cannot say the trial court was clearly wrong in finding that in September 1990, Bernis Bossier was aware of facts strongly suggestive that his condition was the result of surgery which Dr. Ramos had performed at the wrong disc level. The plaintiffs failed to file their claim within one year of the date on which they knew or should have known of the alleged malpractice. Consequently, the plaintiffs' cause of action has prescribed. The assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the trial court's judgment sustaining defendant's exception of prescription is affirmed. Costs of this appeal are assessed to the appellants, Bernis and Duane Bossier.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, C.J., and HIGHTOWER, BROWN, WILLIAMS and CARAWAY, JJ.
Rehearing denied.