734 So.2d 733 (1999)
Judy BELLARD, Plaintiff-Appellant,
v.
Johnny R. BIDDLE, Jr., M.D. Defendant-Appellee.
No. 98-1502.
Court of Appeal of Louisiana, Third Circuit.
March 17, 1999.
*734 R. Ray Orrill, Jr., New Orleans, and Leslie A. Cordell, Lafayette, for Plaintiff/Appellant Judy Bellard.
John Gregory Bergstedt, Lake Charles, for Defendant/Appellee Johnny R. Biddle, Jr., M.D.
Before DECUIR, SULLIVAN and GREMILLION, Judges.
DECUIR, Judge.
Judy Bellard appeals the dismissal of her medical malpractice claim against Dr. Johnny R. Biddle on an exception of prescription. For the reasons which follow, we reverse.
Dr. Biddle, a physician specializing in obstetrics/gynecology, began treating Ms. Bellard in 1987. On September 18, 1989, Dr. Biddle performed a hysterectomy. Several days later, on September 30, the incision burst open and was repaired by Dr. Kusalavage, who was on call for Dr. Biddle. Dr. Kusalavage closed the incision with retention sutures, which are stitches encased in a rubber tubing. Dr. Biddle removed the sutures three weeks later, on October 19. Unfortunately, the wound never properly healed, and Ms. Bellard suffered repeated bouts of infection and cellulitis at the incision site which required ongoing treatment, various medications and constant care.
Ms. Bellard had confidence in Dr. Biddle and continued to see him for the incision problem, as well as other unrelated ailments. In December of 1992, she was hospitalized for IV antibiotic therapy to treat the incisional infection. On December 30, she was advised to return for follow up care in six weeks. Ms. Bellard continued the course of treatment prescribed by Dr. Biddle but decided to seek additional medical help. She was referred to the Wound Care Center where, in August, plans were made for a surgical procedure to reopen the incision to determine the cause of its failure to heal. The surgery was canceled, however, and Ms. Bellard was discharged from the hospital when a death in her family took place. The problems progressively worsened as treatment continued unsuccessfully for two more years. Surgery was performed at the Wound Care Center on March 1, 1995, and a two-inch piece of rubber was found in the abdominal cavity. Ms. Bellard's primary care physician and Dr. Biddle were informed of this development.
On January 26, 1996, Ms. Bellard instituted a claim against Dr. Biddle for failing to remove all of the retention sutures. After medical review panel proceedings, suit was filed and Dr. Biddle filed an exception of prescription based on La.R.S. 9:5628, which provides for the prescriptive periods for medical malpractice actions. Such an action must be brought within one year of the alleged act or omission, or within one year of discovery of the alleged act or omission, provided in the latter case that the action is filed no more than three years from the date of the alleged act or omission. The trial judge maintained the exception of prescription, finding that although suit was filed within one year of Ms. Bellard's surgery which revealed the lost suture, more than three years had passed since Dr. Biddle's procedure to remove the sutures and since his last treatment of Ms. Bellard.
Ms. Bellard submits several theories to bring her claim within the parameters of the prescription statute. First, she argues that the alleged malpractice committed by Dr. Biddle constitutes a continuing tort which suspends the accrual of prescription. She relies on South Central Bell Telephone Co. v. Texaco, Inc., 418 So.2d 531 (La.1982) for the proposition that prescription does not begin to run until the wrongful conduct causing some continual damage is abated. In that case, the wrongful conduct was a constant leak from gas tanks at a service station; the continual damage was a progressive deterioration of the plaintiff's underground *735 polyethylene telephone cables. The Louisiana Supreme Court determined that prescription did not begin to run until the wrongful conduct causing the damage was halted, which was when the leaking gas tanks were replaced. The court stated, "Where the cause of the injury is a continuous one giving rise to successive damages, prescription dates from cessation of the wrongful conduct causing the damage." 418 So.2d at 533.
By analogy, Ms. Bellard argues that prescription did not begin to run in the instant case until the rubber suture was removed in 1995. The continuing tortious conduct, she argues, was Dr. Biddle's failure to look for, detect, and remove the suture, which failure caused continuing and successive damages until the piece of rubber was removed.
In their treatise on Louisiana tort law, Maraist and Galligan discuss the concept of continuing torts: "[T]he continuing tort doctrine prevents the accrual of the prescription only if the tortious conduct is of a continuing nature and gives rise to successive damages occurring from time to time." FRANK L. MARAIST & THOMAS C. GALLIGAN, LOUISIANA TORT LAW § 10-4(e) n. 52 (1996). Similarly, in their analysis of continuing trespass, Prosser and Keaton include the following comments: "But in many cases, as where the defendant erects a structure or dumps rubbish on the land of the plaintiff, the invasion is continued by a failure to remove it. In such a case, there is a continuing wrong so long as the offending object remains." W. PAGE KEATON ET AL., PROSSER AND KEATON ON THE LAW OF TORTS, § 13, at 83 (5th ed.1984). See also Estate of Patout v. City of New Iberia, 97-1097 (La.App. 3 Cir. 3/6/98), 708 So.2d 526; writ granted, 98-0961 (La.7/2/98), 721 So.2d 897, a decision from this circuit which relies on the South Central Bell case and holds that prescription does not begin to run in the case of a continuing trespass until the offending acts are abated.
The law of continuing torts has been addressed in the context of medical malpractice. In Winder v. Avet, 613 So.2d 199 (La.App. 1 Cir.1992), writ denied, 617 So.2d 907 (La.1993), the first circuit determined that a pathologist's misdiagnosis of cancer in 1982, and resulting treatment until 1985 when the misdiagnosis was discovered, constituted a continuing tort. Therefore, the plaintiff's claim filed in 1986 was not prescribed.
In the instant case, Ms. Bellard argues that the tortious conduct, i.e., the very existence of the suture "migrating" and causing progressive infections, gives rise to the application of the legal doctrine of continuing torts.
We believe that the facts, as alleged herein for purposes of the exception of prescription, constitute a continuing tort as described by the Louisiana Supreme Court in South Central Bell. The tortious conduct complained of is not only an affirmative act, but also a continuing omission on the part of Dr. Biddle. Assuming Ms. Bellard's incisional problems were caused by the piece of rubber left in her abdomen, the rubber itself caused harm progressively, just as did the leaking gas tanks in South Central Bell and the build up of trash in Estate of Patout. Thus, we find the existence of the rubber and the harm it allegedly caused to be continuing up to the time it was removed and damage abated in March of 1995. Prescription did not begin to run until that time, and Ms. Bellard's claim filed in January of 1996 was timely.
Because we find merit to Ms. Bellard's continuing tort argument, we need not address her alternative contentions.
For the foregoing reasons, the judgment of the trial court is reversed at defendant's cost and this matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.