750 So.2d 521 (2000)
Bobbie F. JETER, Plaintiff-appellant,
v.
Dr. James R. SHAMBLIN, Defendant-appellee.
No. 32,618-CA.
Court of Appeal of Louisiana, Second Circuit.
February 1, 2000.
*522 Davidson, Nix & Jones by Allison A. Jones, Grant E. Summers, Shreveport, Counsel for Appellant.
Mayer, Smith & Roberts by Mark A. Goodwin, Shreveport, Counsel for Appellee.
Before GASKINS, CARAWAY and KOSTELKA, JJ.
CARAWAY, J.
In this medical malpractice action, the trial court sustained defendant's exception of prescription. The trial court held that the doctrine of contra non valentem was inapplicable in this case, and that sustaining the exception of prescription based on La. R.S. 9:5628 did not violate plaintiffs' right to equal protection under the law. From this judgment the plaintiff has appealed. For the reasons set forth below, we affirm in part, vacate in part, and remand.

Facts
In her request for a medical review panel, Bobbie F. Jeter ("Jeter") made the following factual allegations. On or about August 13, 1980, she was admitted to Springhill Medical Center to undergo a gastric stapling procedure. The surgery was performed by Dr. James R. Shamblin ("Shamblin"). Following the procedure, Jeter was kept on a liquid diet; however, when she later attempted to eat solid foods, she began vomiting. Jeter experienced "constant nausea and vomiting" for several months after her operation, and returned to Shamblin for treatment. Shamblin prescribed various medications and maintained her on a pureed diet. After conservative measures failed to relieve Jeter of her nausea and vomiting, Shamblin decided to reverse the gastric stapling. Jeter consented to and underwent the procedure. Shamblin treated Jeter until December 10, 1985, more than twelve years before the filing of this complaint.
Although Jeter's symptoms improved to the point where she could hold food down, she continued to experience stomach problems. In 1995 she began seeing Dr. Wayne Sessions, who unsuccessfully treated her stomach problems for over two years. Eventually she was referred to a gastro-enterologist who performed an endoscopy on September 4, 1997. During this procedure, the gastro-enterologist discovered a staple or "silastic ring" that had "partially eroded into the wall of the stomach." The ring was removed during the endoscopy. The endoscopy was the first time Jeter learned that Shamblin had not removed all of the staples in her stomach.
Jeter's request for a medical review panel was filed on September 8, 1998, within one year of the discovery of the stomach staple. Her claims against Shamblin were alleged in terms of his negligent failure to remove the stomach staple. Her request was met with an exception of prescription filed by Shamblin on November 12, 1998.
In support of the exception of prescription, Shamblin showed that his treatment of Jeter terminated on December 10, 1985. Other than Jeter's petition commencing the medical review panel process and a letter confirming the final date of Shamblin's treatment, there was no other evidence presented to the trial court for its consideration of Shamblin's exception.
The trial court sustained Shamblin's exception of prescription, noting in its judgment that the doctrine of contra non valentem was inapplicable. The judgment also specifically ruled that sustaining the *523 exception under La. R.S. 9:5628 did not violate Jeter's right to equal protection under the law. This appeal followed, and Jeter asserts the following issues for our review: (1) Whether the doctrine of contra non valentem is applicable in this case; (2) Whether Shamblin's actions constitute a "continuing tort," thereby suspending prescription; and (3) Whether La. R.S. 9:5628 is unconstitutional under the facts of this case.

Prescription of Medical Malpractice
The prescriptive period for claims of medical negligence is set forth in La. R.S. 9:5628 which provides, in pertinent part, as follows:
"No action for damages for injury or death against any ... doctor duly licensed under the laws of this state ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect."
This prescription statute for medical malpractice claims states the general one-year period for prescription of tort claims while additionally intending "to restrict the application of the `discovery rule,' or fourth category of contra non valentem, by providing that, regardless of the date of discovery, a claim must be filed at the latest within three years of the alleged act, omission or neglect." Whitnell v. Menville, 540 So.2d 304, 309 (La.1989).
Generally, the burden of proving that a suit has prescribed rests with the party pleading prescription unless the petition reveals prima facie that the claim has prescribed. Bishop v. Simonton, 615 So.2d 8 (La.App. 2d Cir.1993), writ denied, 617 So.2d 908 (La.1993). When the plaintiff's petition shows on its face that the prescriptive period has expired, the burden is on the plaintiff to demonstrate suspension or interruption of the prescriptive period. Lima v. Schmidt, 595 So.2d 624 (La.1992); Bishop, supra. In a medical malpractice action where plaintiff's application for a medical review panel serves initially as her "petition" and suspends the running of prescription, the defendant nonetheless may raise the exception of prescription by initiating a filing in a court of competent jurisdiction and proper venue at any time, even prior to the completion of the review process by the medical review panel. La. R.S. 40:1299.47 B(2)(a).

Discussion

I.
Jeter does not argue that the special discovery rule of La. R.S. 9:5628 is applicable to preserve her claim. That rule clearly embodies, yet limits to three years, the so-called fourth type of contra non valentem, where prescription is suspended for a claim which is not known or reasonably knowable by the plaintiff, and where such ignorance of the plaintiffs claim is not induced by the defendant. Whitnell, supra.
Jeter instead argues that the third category of contra non valentem prevented the tolling of prescription. Under the doctrine of contra non valentem, this third category suspends prescription when the defendant engages in conduct which prevents the plaintiff from availing himself of judicial remedies. Whitnell, supra; Bossier v. Ramos, 29,766 (La.App.2d Cir.8/20/97), 698 So.2d 711, writ denied, 97-2583 (La.12/19/97), 706 So.2d 463; Kavanaugh v. Long, 29,380 (La.App.2d Cir.8/20/97), 698 So.2d 730, writ denied, 97-2554 (La.5/15/98), 719 So.2d 67.
Assuming that the third type of contra non valentem might apply, the Louisiana Supreme Court addressed the issue in Fontenot v. ABC Ins. Co., 95-1707 (La.6/7/96), 674 So.2d 960, 963:

*524 "Heretofore this court has failed to expressly and directly declare that the third category of contra non valentem applies to medical malpractice cases.... The court has nevertheless examined the applicability of the third category to facts in medical malpractice cases.... Assuming that the third category of contra non valentem does apply to medical malpractice actions under La. R.S. 9:5628, the court will determine whether its application has been triggered under the facts and circumstances of the present case.
The third category of contra non valentem applies when the healthcare provider himself has done some act effectually to prevent the victim from availing himself of his cause of action for medical malpractice.... To trigger application of the third category, a physician's conduct must rise to the level of concealment, misrepresentation, fraud or ill practices."

(Citations omitted, emphasis added.)
In the instant case, Jeter does not allege that Shamblin's conduct rose to the level of intentional concealment, misrepresentation, fraud or ill practices. "In pleading fraud ... the circumstances constituting fraud ... shall be alleged with particularity ..." La. C.C.P. art. 856. At the trial of the exception, no evidence was offered to demonstrate concealment, misrepresentation, fraud or ill practice. The best that Jeter has asserted is that the doctor knew he had placed staples in her stomach, had control over their removal when he reversed the gastric stapling, and did not inform her that any staples remained in her stomach. However, these allegations amount to nothing more than allegations of ordinary medical negligence. Jeter has not alleged or argued that Shamblin knew that he left the silastic ring in her stomach following the second operation. Without such allegation and proof, no showing has been made that Shamblin was ever in a position to thereafter fraudulently misrepresent or conceal the truth of the situation to Jeter.
Accordingly, we conclude that even if the third category of the doctrine of contra non valentem applies in medical malpractice cases, it has no application in this case. This assignment of error lacks merit.

II.
Jeter next argues that prescription did not begin to run until the silastic ring was removed in 1997, because of the "continuing tort" doctrine as announced in South Central Bell Telephone Co. v. Texaco, Inc., 418 So.2d 531 (La.1982) and as applied in Bellard v. Biddle, 98-1502 (La. App. 3d Cir.3/17/99), 734 So.2d 733.
In South Central Bell, supra, the defendant's alleged wrongful conduct was a constant leak from gasoline tanks at a service station, and the continual damage was a progressive deterioration of the plaintiff's underground telephone cables. Accepting this argument, the Louisiana Supreme Court acknowledged the doctrine of continuing tort and stated that where the cause of injury is a continuous one giving rise to successive damages, prescription begins to run from the cessation of the wrongful conduct that causes the damages. Furthermore, the court has more recently stated in discussing the doctrine that "[a] continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act." Crump v. Sabine River Authority, 98-2326 (La.6/29/99), 737 So.2d 720, 728 (emphasis added).
Recent cases of the courts of appeal, including the Bellard case relied upon by Jeter, have tested the continuing tort doctrine in this type of malpractice context with differing results. Bellard v. Biddle, supra (where the surgeon negligently left a piece of rubber tubing inside the victim); In re Medical Review Panel for Claim of Brown, 97-2803 (La.App. 4th Cir.7/1/98), 715 So.2d 1249, writ denied, 98-2020 (La.11/6/98), 728 So.2d 390, certiorari denied, ___ U.S. ___, 119 S.Ct. 1356, 143 *525 L.Ed.2d 518 (1999) (where surgery to remove a mass from the breast of a child resulted years later in the non-development of the breast when the child reached puberty); and Romaguera v. Overby, 97-1654 (La.App. 4th Cir.3/4/98), 709 So.2d 266 (where a doctor failed to fully remove from a patient a subclavian catheter used for chemotherapy). In both the Brown and the Romaguera rulings, the continuing tort theory was rejected as a defense against the three-year discovery rule of the statute while in Bellard a continuing tort was recognized.
From our review of Bellard, we find its reasoning unpersuasive and contrary to the explanations of the continuing tort doctrine by our supreme court. A doctor who has not treated a patient in any manner for over three years has not continued with acts of malpractice. In such case, the patient's suffering is "the continuation of the ill effects of an original, wrongful act," and a claim for such suffering may well be barred by the statute. We therefore choose to follow the analysis of this issue as presented in Brown and Romaguera, and conclude that the doctrine of continuing tort does not apply in this case where treatment had ceased for over twelve years.

III.
Before addressing Jeter's constitutional challenge to the medical malpractice prescription statute, we will consider Jeter's alternative request for an allowance to amend her petition under La. C.C.P. art. 934. That article provides:
"When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed."
In support of her request for an allowance to amend, Jeter cites Whitnell v. Menville, supra. In Whitnell, the patient sued her doctor for an alleged negligent misdiagnosis of a pre-cancerous lesion. The misdiagnosis had occurred over three years prior to the filing of the suit. Finding plaintiff's petition prescribed on its face for the negligence claim, the supreme court nevertheless acknowledged the plaintiffs additional argument beyond the scope of her petition in which she claimed that the doctor actually knew of the pre-cancerous lesion and had "correctly diagnosed" her condition but "failed to disclose" that condition to the plaintiff. Whitnell, 540 So.2d at 310. These newfound allegations changed the tenor of plaintiffs claim from one of negligent misdiagnosis to a claim of intentional concealment. The court therefore allowed for the opportunity to amend the pleadings under La. C.C.P. art. 934.
In this case, we have similarly found that Jeter's negligence claims have prescribed on the face of her petition. As alleged, Shamblin was as ignorant of his negligent act as Jeter. As in the case of alleging fraud in a petition (La.C.C.P. art. 856), Jeter must at least now argue with particularity Shamblin's knowledge of leaving the silastic ring in her, and the intentional concealment of his actions from her, before an allowance for amendment is warranted. She makes no such argument, and she did not elect to question Shamblin at a trial of the exception concerning his knowledge of the silastic ring during the second operation. As the Whitnell court also noted, the plaintiff must at least point out through argument new allegations for "the possibility that the claim has not prescribed." After careful review of this record and her arguments to this court, we find that the need for an amendment to the petition has not been demonstrated. Except for her possible successful attack on the constitutionality of La. R.S. 9:5628 discussed below, Jeter's claims have prescribed.

IV.
In Jeter's last argument, she contends that application of La. R.S. 9:5628 would *526 violate Louisiana's Equal Protection Clause (La. Const. art. I of 1974, § 3) because the statute advances no legitimate state interest in this case. Jeter argues that La. R.S. 9:5628 makes an arbitrary distinction between victims of per se negligence at the hands of healthcare professionals, and victims of per se negligence at the hands of persons other than healthcare professionals. The trial court held that the sustaining of defendant's exception of prescription under La. R.S. 9:5628 did not violate Jeter's right to equal protection.
Once the constitutionality of a statute is questioned, the attorney general must be notified by certified mail of the proceeding and, at his discretion, shall be allowed to represent the interest of the state. La. R.S. 13:4448. Here, Jeter neither alleged the unconstitutionality of La. R.S. 9:5628 in a petition, nor did she notify the attorney general as required by La. R.S. 13:4448. The trial court therefore erred in considering the claim of unconstitutionality and its ruling on that issue is hereby vacated.
Nevertheless, in accordance with La. C.C.P. art. 934 and the jurisprudence, we remand to the trial court for Jeter to specially plead the unconstitutionality of La. R.S. 9:5628 and to give notice to the attorney general. Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291; In Re Medical Review Panel of Harris, 97-1970 (La.App. 1st Cir.9/25/98), 725 So.2d 7.

Conclusion
For the reasons set forth above, the trial court's granting of defendant's peremptory exception of prescription is affirmed, its holding La. R.S. 9:5628 constitutional is vacated, and the matter is remanded to allow plaintiff to amend her petition within two weeks of the finality of this judgment to assert the constitutional issue. Costs of this appeal are assessed to appellant.
AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
GASKINS, J., concurring in part and dissenting in part.
GASKINS, J., concurring in part and dissenting in part.
I respectfully concur and dissent in the majority's opinion. I agree with everything in the opinion except the conclusion that the case must be remanded for a technically-correct raising of the constitutional issue. The rule that the constitutionality of a statute must be raised in a petition, an exception, a motion or an answer, is based on the reasoning that the opposing side is given due notice of the challenge and an opportunity to respond. Although the constitutional issue was not raised properly in the case sub judice, it was fully addressed by both sides and ruled upon by the court. Further, the attorney general's office was not notified, but the failure is not fatal when, as in this case, the courts have upheld the constitutionality of the statute. Once the failure to notify the attorney general's office is noted, the office should be notified of the issue and given opportunity to submit a brief if the case is reviewed further. I would, therefore, affirm the decision of the trial court.