834 So.2d 1238 (2002)
Judy BELLARD
v.
Johnny R. BIDDLE, Jr., M.D.
No. 02-241.
Court of Appeal of Louisiana, Third Circuit.
December 30, 2002.
*1239 Ray Orrill, Jr., Leslie Cordell, Orrill, Shearman and Crodell, L.L.C., New Orleans, LA, for Plaintiff/Appellant Judy Bellard.
Gregory Bergstedt, The Bergstedt Law Firm, Lake Charles, LA, for Defendant/Appellee Johnny R. Biddle, Jr., M.D.
Court composed of HENRY L. YELVERTON, SYLVIA R. COOKS, JOHN D. SAUNDERS, GLENN B. GREMILLION, and ELIZABETH A. PICKETT, Judges.
PICKETT, J.

FACTS
On September 18, 1989, Judy Bellard had a hysterectomy. The surgery was performed by the defendant, Dr. Biddle. On September 30, 1989, Bellard was admitted to the hospital because her wound from the surgery had opened (abdominal dehiscence) and her internal organs were protruding out of the wound (evisceration). Dr. John Kusalavage, who was on call, performed the surgery to correct this *1240 problem. To close the wound, Dr. Kusalavage used three large retention sutures, which are enclosed by rubber casing, because of Bellard's obesity. Bellard remained in the hospital until she was discharged by Dr. Biddle on October 7, 1989. On October 19, 1989, Dr. Biddle removed two of the three retention sutures.
Dr. Biddle continued to treat Bellard for various problems from October 1989 until December 30, 1992. On some occasions, she complained of itching or pain at the cite of the wound. On September 7, 1990, she complained of incisional itching. On January 9, 1992, Bellard was hospitalized for leukocytosis, fever, pneumonitis, hypertension, and chronic obstructive pulmonary disease. She was discharged on January 14, but returned to Lake Charles Memorial Hospital on January 15, 1992, and Dr. Biddle treated her for cellulitis of the abdominal wound incision. Dr. Biddle saw her again on January 23, 1992. Bellard complained of a boil and bleeding at the site of her wound. Dr. Biddle told her to continue the antibiotics he had prescribed, clean the site twice a day, and follow up with Neosporin and bandages. On April 16, 1992, Dr. Biddle noted incisional drainage and applied silver nitrate. On July 21, 1992, a small wound dehiscence was noted, and Dr. Biddle prescribed antibiotics. On November 11, 1992, Bellard presented to Dr. Biddle with complaints of incisional drainage. Dr. Biddle treated Bellard for cellulitis.
In December 1992, Bellard was hospitalized for antibiotic therapy to treat the incisional infection. Following her discharge, her last office visit with Dr. Biddle was on December 30, 1992. Dr. Biddle prescribed treatment and told her to follow up with him in six weeks. She never saw Dr. Biddle again.
On March 1, 1995, Dr. Ronald Kober performed exploratory surgery to determine the source of Bellard's continued infections at the site of the wound. He discovered the retention suture that had not been removed.
Procedural History
Bellard instituted a claim against Dr. Biddle for malpractice on January 26, 1996. A medical review panel found that Dr. Biddle did not breach the standard of care. Bellard filed suit in district court. Dr. Biddle filed an exception of prescription. The trial court granted the exception and dismissed the case with prejudice, finding that the suit was instituted more than three years from the date of the malpractice. Bellard filed an appeal in this court. In Bellard v. Biddle, 98-1502, p. 4-5 (La.App. 3 Cir. 3/17/99); 734 So.2d 733, 734, a panel of this court reversed the district court, stating:
In the instant case, Ms. Bellard argues that the tortious conduct, i.e., the very existence of the suture "migrating" and causing progressive infections, gives rise to the application of the legal doctrine of continuing torts.
We believe that the facts, as alleged herein for purposes of the exception of prescription, constitute a continuing tort as described by the Louisiana Supreme Court in South Central Bell [v. Texaco, Inc., 418 So.2d 531 (La.1982)]. The tortious conduct complained of is not only an affirmative act, but also a continuing omission on the part of Dr. Biddle. Assuming Ms. Bellard's incisional problems were caused by the piece of rubber left in her abdomen, the rubber itself caused harm progressively, just as did the leaking gas tanks in South Central Bell and the build up of trash in Estate of Patout [v. City of New Iberia, 97-1097 (La.App. 3 Cir. 3/6/98), 708 So.2d 526; writ granted, 98-0961 (La.7/2/98), 721 So.2d 897]. Thus, we find the existence of the rubber and the harm it allegedly caused to *1241 be continuing up to the time it was removed and damage abated in March of 1995. Prescription did not begin to run until that time, and Ms. Bellard's claim filed in January of 1996 was timely.
Dr. Biddle did not seek writs from this ruling and the case was remanded to the district court. On November 14, 2001, Dr. Biddle re-urged his exception of prescription, citing the supreme court's decision in In re Medical Review Panel for the Claim of Moses, 00-2643 (La.5/25/01); 781 So.2d 567. In that case, the supreme court specifically overruled the reasoning of this court's decision in this case. The trial court denied the exception of prescription, finding that the previous judgment of this court was binding and could not be re-heard because of the doctrine of res judicata. The denial of the exception was certified as a final judgment, and this appeal followed.

ASSIGNMENTS OF ERROR
The appellant, Dr. Biddle, asserts three assignments of error:
1. The trial court erred in finding that this court's previous ruling denying the appellant's first peremptory exception of prescription was a final judgment pursuant to La.Code Civ.P. art. 1841 which should be given preclusive effect under the doctrine of res judicata, La.R.S. 13:4231.
2. The trial court erred in ignoring the clear dictates of the supreme court which found this court's ruling on the appellant's first peremptory exception of prescription in error and specifically overruled this court's previous ruling adopting a continuing trespass theory.
3. The trial court erred in not granting appellant's peremptory exception of prescription since it is judicially established that prescription began to run on December 30, 1992, and that the plaintiff's claim of medical malpractice was not filed within three years of that date.

DISCUSSION
The trial court determined that the judgment granting the exception of prescription and dismissing the case was a final judgment, and that judgment remained final even though this court reversed the judgment and reinstated the cause of action, stating as follows:
The defendants [sic] in this situation allowed the decision of the Court of Appeal to remain in effect and returned back to the litigation without taking it up for a higher court review, thus, in this Court's opinion allowing that decision to become final, which was based on the earlier determination of the trial court, which was the granting which would have to be treated as a final decision since it was conclusive under 13:4231. For these reasons, and, additionally, that the law of the case at the time and that the standard was met with regard to prescription, the Court will deny the exception of the defendants on the issue of prescription and will sign a judgment to that effect when submitted.
A judgment granting an exception of prescription decides the merits of a case and is therefore a final judgment. La. Code Civ.P. art. 1841; In re Howard, 541 So.2d 195 (La.1989); Phillips v. Patterson Ins. Co., 98-1849 (La.App. 3 Cir. 5/19/99); 734 So.2d 1285. Conversely, a judgment denying a peremptory exception, such as prescription, is an interlocutory judgment. La.Code Civ.P. arts. 927 and 1841; Duplechin v. Toce, 434 So.2d 648 (La.App. 3 Cir.1983).
*1242 The issue before this court is whether this court's reversal of the granting of an exception of prescription is a final judgment to the extent that it precludes Dr. Biddle from re-urging the exception of prescription again in the trial court under the doctrine of res judicata.
La.Code Civ.P. art. 1841 states:
A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled. It may be interlocutory or final.
A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment.
A judgment that determines the merits in whole or in part is a final judgment.
The previous judgment of this court was an interlocutory judgment, as it did not determine the merits of the case. In fact, this court's previous judgment, determining the cause of action had not prescribed, ordered the merits of this case to be heard. It is clearly interlocutory in nature.
In order for the doctrine of res judicata to be applicable, there must be a final judgment. La.R.S. 13:4231 states, in pertinent part:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
....
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
Because the previous judgment of this court is interlocutory in nature, La.R.S. 13:4231 simply does not apply.
The appellee argues that even if res judicata does not act to bar re-litigation of the issue of prescription, the doctrine of "law of the case" does apply. This court discussed the law of the case doctrine fully in Cree Oil Co. v. Home Ins. Co., 94-1219, p. 17 (La.App. 3 Cir. 3/8/95); 653 So.2d 620, 629, writ denied, 95-1554 (La.9/29/95); 660 So.2d 875 (quoting Dodson v. Community Blood Center of Louisiana, Inc., 633 So.2d 252, 255 (La.App. 1 Cir.1993), writs denied, 93-3158 (La.3/18/94); 634 So.2d 850 and 93-3174 (La.3/18/94); 634 So.2d 851):
The "law of the case" doctrine applies to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. See Brumfield v. Dyson, 418 So.2d 21 (La. App. 1st Cir.), writ denied, 422 So.2d 162 (La.1982). This policy applies to parties who were parties to the case when the former decision was rendered and who thus had their day in court. The reasons for the "law of the case" doctrine is [sic] to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Day v. Campbell-Grosjean Roofing and Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971). This doctrine is not an inflexible law, thus appellate courts are not absolutely bound thereby and may exercise discretion in application of the doctrine. It should not be applied where it would accomplish an obvious injustice or where the former appellate decision was manifestly *1243 erroneous. Brumfield v. Dyson, 418 So.2d at 22.
In the matter before us, this issue has been previously argued and a decision rendered. However, as the supreme court's subsequent ruling in Moses specifically addresses this issue, we should re-examine the prescription issue in light of the supreme court's pronouncement in that case. In Moses, the supreme court stated:
The reasoning in Bellard is erroneous in three respects. First, it fails to apply the three-year overall limitation on the discovery rule to the single act of malpractice. Second, it applies a theory of continued omissions contrary to our prior jurisprudence limiting that theory to instances of fraudulent concealment. Finally, it departs from our continuing tort jurisprudence requiring for a continuing tort not only continuing damages, but also continuing tortious conduct. We thus overrule Bellard.

The statute governing prescription in medical malpractice cases is La.R.S. 9:5628, which provides:
A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
As discussed in Moses, the statute contemplates a one-year prescription period for medical malpractice actions. This period runs from the date of the alleged malpractice if damages are immediately apparent. In cases where damages are not immediately apparent, the one-year prescription period begins on the date of the discovery of the alleged malpractice. However, in cases where the discovery exception is applied, there is a three-year peremption period that begins to run on the date of the alleged malpractice.
In Moses, the patient, pregnant at the time, had a device affixed to her cervix on September 3, 1991, to prevent premature delivery. The device was removed on December 30, 1991, but the some of the metal stitches that had been used to hold the device in place were not removed. The remaining stitches were discovered on July 16, 1996, and removed on September 5, 1996. The patient began proceedings against the hospital on July 2, 1997. The hospital filed a peremptory exception of prescription, which the trial court sustained. The patient appealed, and the First Circuit, relying on this court's decision in Bellard, reversed the trial court and found that prescription did not begin to run until September 5, 1996, when the metal stitches were removed, and thus the suit was instituted timely on July 2, 1997. The First Circuit reasoned that the continued presence of the sutures constituted a continuing tort.
The supreme court reversed the First Circuit. They found that the three-year limit in La.R.S. 9:5628 could not be enlarged to encompass either a continuing omission (termination rule) or a continuing *1244 trespass theory. About the termination rule, the supreme court stated:
Under the termination rule, when the health care provider continues to treat the patient after making an error and failing to discover it, "the health care provider is deemed negligent both at the time of the malpractice and at all subsequent examinations; thus, the limitation period does not commence until the termination of the patient's relationship with the health care provider." Clay B. Tousey, Jr., Comment, An Analysis of State Legislative Responses to the Medical Malpractice Crisis, 1975 Duke 1417, 1431.
* * *
The termination rule theorizes that the continuing injury is a tort that continues beyond the time of the occurrence until it is either discovered or the relationship terminates, whichever occurs earlier. Under the termination rule, a single negligent act is conceptualized as giving rise to a continuing tort by "view[ing] the injury as continuing and perceiv[ing] the injury as not accruing [and prescription thus not commencing to run] until a damaged party discovers the wrong." Susan S. Septimus, The Concept of Continuous Tort as Applied to Medical Malpractice: Sleeping Beauty for Plaintiff, Slumbering Beast for Defendant, 22 Tort & Ins. L.J. 71, 89 (1986). Given its focus on the principle that the injury continues beyond occurrence until when the harm is discovered or when the relationship of the parties is terminated, the termination rule is, in essence, a "particularized application of the discovery rule. The rule presumes, for policy reasons, that a patient has not discovered an injury during the time medical treatment continues." Stanbury v. Bacardi, 953 S.W.2d 671, 676 (Tenn.1997)(concluding rule outlived necessity given comprehensive medical malpractice statute of limitation).
By statute, however, the Legislatures in many jurisdictions, including Louisiana, have placed overall limitations for asserting a claim based on such discovery rule. "These statutes of repose run from the specific date of occurrence and serve to limit the concept of continuing injury." [citation omitted]. Such repose rules serve to set a fixed time period, three years in Louisiana, after which a plaintiff's right to be compensated for such not immediately knowable injuries is cut off. By their nature, statutes of repose "reimpose on some plaintiffs the hardship of having a claim extinguished before it is discovered, or perhaps before it even exists." W. Page Keeton, et al., Prosser and Keeton on Torts § 30 at 168 (5th ed.1984). This is especially so with foreign objects. While some state legislatures have carved out an express discovery rule exception for foreign objects, the Louisiana Legislature has not. While harsh, Section 5628 precludes our recognizing the termination rule type continuing tort as a basis for enlarging the three-year cutoff on the discovery rule based on the theory of a continuing injury to plaintiff.
In the instant case, the date of the original malpractice, when Dr. Biddle failed to remove one of the retention sutures, was October 19, 1989. The date of discovery of the remaining suture was March 1, 1995, and it was removed on that day. Bellard instituted an action against Dr. Biddle on January 26, 1996. Under the law as espoused by the supreme court in Moses, Bellard was barred from filing suit on October 20, 1992, three years from the date of the malpractice. In brief, the plaintiff would have us adopt the termination rule, which the supreme court specifically stated was inapplicable.
*1245 In light of the clear rejection by the Supreme Court's previous ruling on this issue, we do not find the law of the case doctrine applicable. The ruling of the trial court is reversed and the plaintiff's case dismissed with prejudice. Costs of this appeal are assessed against Judy Bellard.
REVERSED AND RENDERED.
COOKS, J., dissents and assigns written reasons.
SAUNDERS, J., dissents for the reasons assigned by Judge COOKS.
COOKS, J., Dissents:
I disagree and would find the trial court's judgment was a final appealable judgment which status did not change because of our holding on appeal reversing it. Dr. Biddle should have applied for supervisory writs with the Louisiana Supreme Court and that Court would have had the opportunity to set aside our judgment in this case rather that merely, by dicta, declaring our reasoning erroneous in Moses.