618 So.2d 38 (1993)
Ashton CHIASSON, et ux., Plaintiffs-Appellants,
v.
Dr. John DOE, et al., Defendants-Appellees.
No. 92-765.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1993.
*39 Sera Hearn Russell, III, Lafayette, for plaintiffs-appellants Ashton Chiasson et ux.
Marc W. Judice, Lafayette, for defendants-appellees Dr. John Doe et al., Dr. Phillip Marler.
Nicholas Joseph Sigur, Lafayette, for Dr. Donald Harper.
Before DOMENGEAUX, C.J., and GUIDRY, and WOODARD, JJ.
WOODARD, Judge.
This is an action for medical malpractice. The issue before us is prescription.
On September 19, 1988, Norma Chiasson, et ux. (plaintiffs) filed a complaint with the Commissioner of Insurance asserting claims for malpractice against Dr. Philip Marler, Dr. Donald Harper and Our Lady of Lourdes Regional Medical Center (defendants). The instant suit was filed on April 23, 1990.
Plaintiffs' claims of negligence consist of allegations against Dr. Marler and Dr. Harper relating to the course and treatment with narcotic medication commencing in 1981 and allegedly resulting in addiction; and allegations relating to an allegedly improper detoxification of Mrs. Chiasson undertaken during a hospitalization at Our Lady of Lourdes in Lafayette on September 25, 1987.
The suit was met with an exception of prescription by defendants, alleging that Mrs. Chiasson had actual or constructive knowledge more than one year prior to the filing of the complaint with the insurance commissioner, that malpractice had occurred, resulting in an untimely law suit.
A hearing on the exception was held in the district court. The trial court held that plaintiffs' claims were barred by prescription. Subsequently, the trial court amended its judgment clarifying that all plaintiffs' claims had prescribed, except those relating to allegations of improper care during the September 25 through October 3, 1987 hospitalization.
Plaintiffs now timely appeal this judgment.

FACTS
In 1968, Norma Chiasson underwent a lumbar discectomy, followed by a fusion in 1971. In 1977, Mrs. Chiasson underwent a C5-6 fusion. Four months later, she dislodged her fusion in an accident at home, and subsequently underwent another fusion.
In 1981, Mrs. Chiasson went to see Dr. Phillip Marler, an internal medicine specialist, and later, Dr. Donald Harper, a neurologist, because of severe headaches and intractable pain resulting from her history of back surgeries. Both doctors attempted to *40 manage a medical drug therapy program that would bring some relief to Mrs. Chiasson.
At first, the treatment program consisted of physical therapy, bed rest, parenteral analgesia and non-narcotic medications. During the flare-ups of pain, oral opiates were administered at home. When the oral opiates did not help, Mrs. Chiasson was instructed to go to the emergency room for injections. Eventually, Mr. Chiasson was instructed on how to give his wife pain injections to avoid trips to the emergency room.
Over the course of several years, Mrs. Chiasson became increasingly addicted to the narcotic medications prescribed to her. The record shows that in 1983, two other physicians, Dr. John Jackson and Dr. Jankovich were seen on a consult basis and told Mrs. Chiasson that her headaches were vascular in nature, and other non-narcotic drugs should be prescribed. Both further advised that the narcotic medications she was on should be discontinued. Drs. Harper and Marler tried to follow the recommendations of these doctors, but without success.
In December, 1984, Dr. Harper admitted Mrs. Chiasson to Our Lady of Lourdes Regional Medical Center where withdrawal therapy was administered. Mrs. Chiasson testified that she was aware that her blood pressure problems and shaking may have been the result of the withdrawal from the five different narcotics she was on and of Dr. Harper's concern of her potential addiction and withdrawal.
In 1985, Mrs. Chiasson consulted with Dr. Arthur Taub, a neurologist, who also advised her that the narcotic medications should be discontinued and replaced with Inderal and Elavil, non-narcotic drugs.
Mr. Chiasson testified about his concern regarding his wife's possible addiction and stated he mentioned these concerns to both Dr. Marler and Dr. Harper who also had their own concerns. Further testimony reveals that the plaintiffs were aware that the injectables were destroying soft tissue in the hip area.
In late 1986, the plaintiff's pharmacist, Mr. Bryan Benoit, spoke with Mr. Chiasson about his wife's heavy drug use and told Mr. Chiasson he felt his wife was addicted.
In September, 1987, Mrs. Chiasson was admitted into Our Lady of Lourdes Medical Center where detoxification took place. The day after she was released, she attempted to commit suicide by slashing her wrist. Her husband came home early that day only to find her and rush to the hospital. Immediate reconstructive surgery to her wrist was done. The surgeon in charge, Dr. Kenneth Laborde, conversed with Dr. Marler regarding the dispensing of all medications she was on. After she was discharged from the surgery, Mrs. Chiasson was placed at Insight of America where she received continuous surveillance and help from professionals in a detoxification program.

LAW
Plaintiffs alleged in their assignments of error that the actions of the physicians amounted to a continuing tort, therefore, their claim did not prescribe until one year after sufficient knowledge was imputed to Mrs. Chiasson that her treatment was inappropriate.
Under Uniform RulesCourts of Appeal 2-12.4, all specifications or assignments of error must be briefed. The court may consider them abandoned if the assignment is not briefed. Plaintiffs' attorney did not brief this assignment of error. However, we have decided to look at this issue because we find it has merit.
The Louisiana Supreme Court discussed the continuing tort concept in South Central Bell Telephone Company v. Texaco, Inc., 418 So.2d 531, 533 (La.1982), stating that "[w]hen the tortious conduct and resulting damage continue, prescription does not begin until the conduct causing the damage is abated." In South Central Bell Telephone Company v. Texaco, Inc., a continuous gasoline leak constituted continuing tortious conduct causing continuous damage. Continuous damage alone is insufficient to give rise to a continuing tort.
*41 We have further held in Crawford v. Howard, 539 So.2d 735, 736 (La.App. 3rd Cir.1989), writ denied, 541 So.2d 840 (La. 1989), that continuing pain and discomfort arising from dental treatment did not constitute a continuing tort when the plaintiff failed to show continuing conduct on the part of the doctor.
In order to allege continuing tort, a plaintiff must allege both continuous action and continuous damage. In the case sub judice, plaintiffs allege that Dr. Marler, as the primary treating physician, continued to treat Mrs. Chiasson's severe headaches between 1981 and 1987 with narcotic medications, and that in 1984, Dr. Harper was brought in by Dr. Marler to help detox Mrs. Chiasson from the narcotic drugs to which she had become addicted. After detoxification, she was placed once again on the narcotic medications by both doctors and she again became addicted to the drugs. On at least forty-two (42) occasions between 1983-1987, she was treated in the emergency room of Our Lady of Lourdes Regional Medical Center in Lafayette under the supervision of both Drs. Marler and Harper, where she was injected with narcotic drugs.
As a result of the continuing treatment by Dr. Marler and Dr. Harper, Mrs. Chiasson suffered the continuing damage of addiction which resulted in not only having to go through withdrawal therapy, but also causing a deterioration to her hips and thighs, due to approximately 250 injectables she was receiving in a home therapy program supervised by the doctors. Mrs. Chiasson also attempted suicide by slashing her wrist causing extensive damage to her tendons and nerves.
Having found that plaintiffs sufficiently alleged facts which demonstrate both continuous action and continuous damage, we reverse the trial court and hold that prescription did not begin to run until after the last hospitalization of September, 1987 when Mrs. Chiasson was no longer under the treatment of Drs. Harper and Marler. Plaintiffs have therefore timely filed their lawsuit and their claims of negligence against all defendants have not prescribed.
Costs of this appeal are assessed against defendants.
REVERSED.
GUIDRY, J., concurs and assigns reasons.
GUIDRY, Judge, concurring.
I concur for the purpose of advancing additional reasons in support of our judgment reversing the trial court's judgment.
It is well settled that in matters involving legal malpractice prescription is suspended under the civilian doctrine of contra non valentum until termination of the attorney-client relationship. Olivier v. National Fire Insurance Company, 499 So.2d 1330 (La.App. 3rd Cir.1986); Milligan v. LaCaze, 509 So.2d 726, 509 So.2d 729 (La. App. 3rd Cir.1987), writ denied, 512 So.2d 440 (La.1987); Blanchard v. Reeves, 469 So.2d 1165 (La.App. 5th Cir.1985), writ denied, 476 So.2d 347 (La.1985), Braud v. New England Insurance Company, 576 So.2d 466 (La.1991). There appears to be no justifiable reason why this principle should not be equally applicable in cases involving medical malpractice, where the physician-patient relationship continues despite the fact that the patient, during the course of treatment, receives opinions from other physicians that the treatment being administered by the treating physician is inappropriate. To hold otherwise would impose a greater burden of medical knowledge on the patient than that possessed by the treating physician.
For these additional reasons, I respectfully concur.