MAX N. TOBIAS, JR., Judge.
This appeal by plaintiff, Darlene Ivon, arises out of a medical malpractice case against defendants, Francisco J. Soler, M.D., Joseph Epps, M.D., and Pendleton Memorial Methodist Hospital.[1] Dr. Soler filed a peremptory exception of prescription, which was sustained by the trial court. For the reasons set forth below, we affirm the judgment.
Ms. Ivon, an x-ray technician, was referred to Dr. Soler for evaluation of an enlarged lymph node on her right neck. Dr. Soler performed a biopsy at Pendleton Memorial on 14 February 1997. On 19 February 1997, Ms. Ivon presented to Dr. Soler with complaints of weakness in her shoulder; he explained that the nerves were touched in the exploration of the neck area, which may account for her complaint. Ms. Ivon contacted Dr. Soler’s office on 1 April 1997, advising that she could hardly lift her arm, that the nerves were inflamed, and that she would attend physical therapy. She returned to Dr. Soler’s office on 9 April 1997 and reported weakness in her shoulder and ear numbness. Dr. Soler referred her to Dr. IsEpps, a neurologist, for a neurological evaluation. Dr. Soler’s office notes reveal that Ms. Ivon kept him informed of her course of treatment with Dr. Epps, al *534 though she did not see Dr. Soler again concerning the February 1997 surgery.[2]
The evaluation by Dr. Epps took place on 21 April 1997, during which Ms. Ivon complained of right shoulder weakness, which she related to her surgery. Following his examination, Dr. Epps documented a right brachial plexus versus C4 root injury. He recommended an MRI of the right brachial plexus, an EMG of the right neck, and a referral to anesthesia for a ganglion block. On 1 May 1997, a stellate ganglion block was performed to assist in pain relief. Ms. Ivon reported only brief relief to Dr. Soler, but that she would consider the procedure again. Dr. Soler’s 2 May 1997 office notes reflect:
I told her that she needs to continue with the advice of Dr. Epps and that I am sorry the nerve damage took place. I also told her that I am not sure if this is permanent or not and that Dr. Epps is the best one to decide this and explain it to her.
Ms. Ivon underwent repeat stellate ganglion blocks in September 1997 with only transient relief. She returned to Dr. Epps on 1 May 1998 with complaints of right clavicle pain. Dr. Epps assessed the plaintiff with a spinal accessory transection and referred her to David Kline, M.D., a neurosurgeon.
Dr. Kline examined Ms. Ivon on 29 June 1998 and recommended exploratory surgery. On 26 August 1998, surgery was performed; Dr. Kline performed a sural graft repair x 2 of the right accessory nerve and neurolysis | ^portion of the nerve. Eleven months post-surgery, Ms. Ivon was able to abduct her arm to 90 degrees laterally and forward to approximately 110 degrees.
Ms. Ivon filed a petition for damages with the Louisiana Patient’s Compensation Fund on 25 January 1999, almost two years after the surgery performed by Dr. Soler, and proceeded to submit her case to a medical review panel. In response to the suit, Dr. Soler filed an exception of prescription, which was sustained by the trial court. In the judgment, the trial court stated:
The court finds that the plaintiff had sufficient knowledge to excite further inquiry into the nature, extent and cause of the nerve injury that occurred during the February 1997 lymph node biopsy. Therefore, the continued efforts by defendants to relieve and/or lessen the effects of the nerve damage did not act to suspend or interrupt the running of prescription. In accordance with Acosta v. Campbell, 744 So.2d 112 (La.App. 4th Cir.1999), the court finds that Plaintiffs action is barred by prescription and the Medical Review Panel is hereby enjoined and dissolved.
On appeal, the plaintiff argues that the trial court erred in its application of the civilian doctrine of contra non valentem agere nulla currit praescriptio. Instead, the plaintiff claims that because of the continuing tort committed by Drs. Soler and Epps, prescription did not begin to run until her treatment with Dr. Epps ceased in June 1998. Therefore, she claims the lawsuit filed on 25 January 1999 is timely.
Louisiana’s prescriptive statute for medical malpractice cases, La. R.S. 9:5628, provides:
A. No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife praeti- *535 tioner, dentist, psychologist, optometrist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be 14brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
The Louisiana Supreme Court has described La. R.S. 9:5628 as a “tripartite prescription provision.” In re Medical Review Panel for Claim of Moses, 00-2643, p. 7 (La.5/25/01), 788 So.2d 1178, 1178. First, a one-year prescription period is the general rule, which applies to all types of medical malpractice actions. Under this general rule, such actions prescribe one year from the date of the alleged act, omission or neglect. This rule applies when the damages are immediately apparent. Id. at pp. 7-8, 788 So.2d at 1178. Second, in cases involving damages that are not immediately apparent, a discovery exception to the general rule is codified. Under this discovery rule, such actions prescribe one year from the date of discovery of the alleged act, omission, or neglect. Id. at p. 8, 788 So.2d at 1178-79.
Third, an overall limitation is placed on cases otherwise falling within the discovery rule. That overall limitation provides that “in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect. La. R.S. 9:5628.” Id. at pp. 8-9, 788 So.2d at 1179, citing Boutte v. Jefferson Parish Hospital Service District No. 1, 99-2402, p. 5 (La.4/11/00), 759 So.2d 45, 49.
Although the trial court relied on our opinion in Acosta, a case that applied the doctrine of contra non valentem, or the discovery rule, the plaintiffs position is I r.that the continuing negligent act was the continuing failure by Drs. Soler and Epps to properly diagnose and treat her timely over a period of sixteen months. This failure, the plaintiff argues, resulted in a reduction in her chances of successful surgical intervention, as noted by Dr. Kline.
The issue of a continuing tort in the context of a medical malpractice case was recently addressed by the Supreme Court in Moses, supra. The Court distinguished between cases where the plaintiff was harmed as a result of the accumulative effect of a course of negligent treatment, such as a series of radiation treatments or administration of a course of narcotic drugs, and a single act of malpractice. GO-2643 at pp. 20-21, 788 So.2d at 1185-86. In Moses, as in the instant case, neither cumulative damage to the plaintiff, nor continuing treatment by the defendant is present; rather, this case, insofar as Dr. Soler is concerned, involves a single act of medical malpractice.
The act by Dr. Soler was a one-time occurrence. Within two months of the surgery, he referred Ms. Ivon to Dr. Epps for diagnosis and treatment because her condition had not resolved. Although Ms. Ivon continued to treat with Dr. Soler following the referral, it was for matters unrelated to the biopsy. The continuing tort doctrine does not apply to the facts presented here.
*536 Because we expressly reject the plaintiffs reliance on the continuing tort theory, we must examine the reasoning of the trial court in finding that the plaintiff had sufficient knowledge to “excite further inquiry into the nature, extent and cause of the nerve damage” within one year of the surgery. The standard of review of a trial court’s finding of facts supporting prescription is that the appellate court should not disturb the finding of the trial court unless it is clearly wrong. Hoerner v. Wesley-Jensen, 95-0553 (La.App. 4 Cir. 11/20/96), 684 So.2d 508. Although Rthe case was submitted to the trial court by means of depositions and documentary evidence, rather than live testimony, that does not alter standard of review. Davis v. Puryear, 95-1637 (La.App. 4 Cir. 5/1/96), 673 So.2d 1298,1302.
While the trial court did not refer specifically to the record in the judgment, we find ample evidence to support the conclusion that the running of prescription was not suspended or interrupted. Ms. Ivon admits that she was experiencing problems in her shoulder within five days after the surgery. It is undisputed that between 1 April and April 9 1997, Ms. Ivon’s symptoms worsened. It was at this point that Dr. Soler referred her to Dr. Epps. Dr. Epps’ impression was documented as “right brachial plexus versus C4 root injury.” Dr. Soler’s office notes reflect that on 2 May 1997, he told Ms. Ivon that he did not know if the nerve damage was permanent or not. Three days later, Ms. Ivon called Dr. Soler’s office and told his office staff that Dr. Epps had stated that he was not sure whether or not she would regain full mobility of her arm.
Dr. Epps sent Ms. Ivon for stellate ganglion blocks, the last of which was performed on 29 September 1997. While Ms. Ivon testified in her deposition that she obtained only transient relief, she did not return to Dr. Epps until 1 May 1998. Prescription had run. Although Ms. Ivon claims that she was misled as to the permanent nature of her injury, she knew that her symptoms were related to the 14 February 1997 surgery. We find that Ms. Ivon’s inaction in faffing to investigate further was unreasonable in light of the facts known to her.
We agree with the trial court’s rebanee on our decision in Acosta v. Campbell, 98-2538 (La.App. 4 Cir.1999), 744 So.2d 112, where the plaintiff complained of numbness and tingling in her dominant arm and hand immediately after surgery in December 1993. She was told that she suffered a nerve injury 17probably due to pressure or compression during the surgery, a “normal” consequence of swelling that accompanied that type of surgery. Ms. Acosta underwent physical therapy and other treatments for her arm and hand.
Although aware that her symptoms were caused by a nerve injury that occurred during the surgery, the plaintiff alleged that she was not advised until almost one year later that the neurological injury might have been caused by “improper positioning” during surgery. Id. at p. 2, 744 So.2d at 114. Suit was filed almost two years after the surgery. The trial court sustained the defendants’ peremptory exception of prescription, finding that Ms. Acosta had knowledge of sufficient facts underlying her cause of action to have made a claim within the first year after the surgery, and that the delayed filing was negligent or unreasonable.
On appeal, Ms. Acosta argued that she was assured by her treating physicians that her condition was “a natural result/side effect of the surgery” and that they failed to disclose that it might have resulted from improper positioning rather than from swelling. We rejected the argument based on the evidence in the record *537 that contradicted this position and found that a reasonable patient would have questioned her doctors more closely, or asked for clarification as to causation. Id. at p. 7, 744 So.2d at 117.
We also reject Ms. Acosta’s reliance on the “continuing relationship doctrine.” Her doctors’ continued efforts to relieve and/or lessen the effects of the nerve damage did not act to suspend or interrupt prescription when Ms. Acosta had sufficient knowledge to excite further inquiry into the nature, extent, and cause of the nerve injury that occurred during the December 1998 operation. Id. at p. 10, 744 So.2d at 118.
IsWe find the matter before us to be virtually indistinguishable from Acosta. Ms. Ivon knew that her injury, whether temporary or permanent, had been caused during the 14 February 1997 surgery. Although reassured by the doctors that the condition was temporary, she concedes that her symptoms worsened over time. We also take note of Dr. Soler’s office records reflecting statements made by him and the plaintiff demonstrating sufficient knowledge to excite further inquiry by Ms. Ivon into the nature, extent, and cause of her nerve injury.
For the reasons set forth above, we affirm the judgment of the trial court sustaining the peremptory exception filed by Dr. Soler and remand the case for further proceedings against the remaining defendant. All costs of this appeal are assessed against the plaintiff.
AFFIRMED.

. Since the lawsuit was originally filed, Dr. Soler died and his estate was added as a party defendant. The record on appeal does not reflect that Dr. Epps has ever answered the petition, and the plaintiffs have voluntarily dismissed Pendleton Memorial Methodist Hospital, without prejudice.

. In mid-November 1997, Dr. Soler referred Ms. Ivon to Madelyn Leach, M.D., for evaluation of a lesion in the left scapular area that he had removed. This treatment, however, was not related to the 14 February 1997 surgery on the right side of her neck.