# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-682

ROXINE LACHNEY

VERSUS

JAMES L. GATES, M.D. AND
CHRISTUS CABRINI SURGERY CENTER, L.L.C.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 259,930
HONORABLE LOWELL C. HAZEL, DISTRICT JUDGE

**********

## VAN H. KYZAR
## JUDGE

**********

Court composed of Elizabeth A. Pickett, Van H. Kyzar, and Jonathan W. Perry, Judges.

**AFFIRMED.**

**Brian M. Caubarreaux**
**Eugene A. Ledet, Jr.**
**Jacob R. Caubarreaux**
**Charles A. Woessner**
**Brian Caubarreaux & Associates**
**2000 Kaliste Saloom Road, Suite 102**
**Lafayette, LA 70508**
**(337) 202-0900**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **Roxine Lachney**

**Aldric C. Poirier, Jr.**
**Kelly M. Brian**
**Blue Williams, LLP**
**1060 West Causeway Approach**
**Mandeville, LA 70471**
**(985) 626-0058**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Christus Cabrini Surgery Center, L.L.C.**

**Randall M. Seeser**
**Gold, Weems, Bruser, Sues & Rundell**
**P.O. Box 6118**
**Alexandria, LA 71307**
**(318) 445-6476**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **James L. Gates, M.D.**

**KYZAR, Judge.**

In this medical malpractice action, the plaintiff, Roxine Lachney, appeals from the trial court judgment granting the exception of prescription in favor of the defendant, Christus Cabrini Surgery Center, L.L.C., and dismissing her claims against it with prejudice. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Ms. Lachney (Plaintiff) underwent three surgical procedures performed by Dr. James L. Gates, all of which were performed between February 2013 and June 2014, at the Christus Cabrini Surgery Center in Alexandria, Louisiana. As a result of the care she received, Plaintiff filed a medical malpractice complaint against Dr. Gates, alleging numerous grounds by which he breached the standard of care during his care and treatment of her. Although the medical review panel found that Plaintiff was offered more conservative non-surgical treatment alternatives by Dr. Gates, that the treatment recommended by him was appropriate, and that the complications she suffered were typical of the procedures performed, it stated: "Nevertheless, in light of the sworn affidavit testimony submitted by the claimant, Roxine Lachney, there is a material issue of fact, not requiring expert opinion, which the panel cannot resolve without making a credibility determination, bearing on liability for consideration of the court."

After the rendition of the medical review panel's July 11, 2017 opinion, Plaintiff filed suit on September 22, 2017, seeking damages for injuries she suffered related to Dr. Gates's "negligence, fault and deviation in the standard of care" during his care and treatment of her. On December 7, 2018, she filed a first supplemental and amending petition, alleging that Dr. Gates was negligent in failing to inform and advise her that "he was undergoing significant mental distress, psychological turmoil and emotional instability, relative to spousal abuse, all of which affected his medical

judgment. Had plaintiff known of Dr. Gates's emotional instability, she would have sought care elsewhere." The alleged malpractice claims against Christus Cabrini occurred prior to and subsequent to her June 2014 surgery.

On September 21, 2020, Plaintiff filed a second supplemental and amending petition naming Christus Cabrini Surgery Center, L.L.C. (Christus Cabrini) as an additional defendant in her suit and alleging the following:

"9.

> On April 19, 2014, only six (6) weeks before the surgery in question, defendant **JAMES L. GATES, M.D.**, severely beat his wife of thirty-four (34) years, Mona Gates. Dr. Gates was arrested and charged with various crimes. In an effort to salvage his medical license, **JAMES L. GATES, M.D.**[,] allegedly participated in domestic violence counseling with psychologist James Quillin, Ph.D. and Jason Bonfanti, social worker. Quillin and [Bonfanti] documented psychiatric/psychological conditions including severe depression, nervousness, excessive worry, agitation, rage attacks, and restlessness. Additionally, **JAMES L. GATES, M.D.**, with limited and potentially improper psychological testing with which to confirm diagnosis(s) [sic], was prescribed medication with very serious and potentially impairing symptoms."

> . . . .

"10.

> Defendant, **CHRISTUS CABRINI SURGERY CENTER, L.L.C.**, who upon information and belief, had full knowledge of the condition of **JAMES L. GATES, M.D.** and nevertheless, allowed **JAMES L. GATES, M.D.**, to treat and perform surgical procedures at its facility within weeks of the domestic attack, without any assessment whatsoever of his fitness to practice medicine."

She further alleged the following "tortious actions and inactions" of Dr. Gates:

1. Failing to implement policies and protocols to address and monitor the fitness of physicians enjoying privileges at its facility;

2. Failing to properly credential physicians practicing at its facility[;]

3. Failing to recognize the significant psychiatric/psychological condition of **JAMES L. GATES, M.D.**, thereby restricting his practice of medicine at the facility; and

2

4. Failing to recognize the potentially serious and impairing effects of medicine consumed by **JAMES L. GATES, M.D.** requiring a restriction of his practice of medicine at the facility.["]

Plaintiff finally alleged:

"12.

As a result of the above tortious actions and inactions of defendant, **CHRISTUS CABRINI SURGERY CENTER L.L.C., L.L.C.**, plaintiff, **ROXINE LACHNEY**, without knowledge of **JAMES L. GATES, M.D.** having committed horrendous domestic abuse and without knowledge of his psychiatric/psychological condition, gave misguided and uninformed consent to the June 6, 2014 surgical procedure by Dr. Gates. Had plaintiff been properly informed of the above, plaintiff would have not consented to the surgery.["]

In response to the first and second supplemental amending petitions, both Christus Cabrini and Dr. Gates filed peremptory exceptions of prescription, arguing that the allegations contained in these petitions were prescribed as they were filed more than three years from the date of the alleged act or acts giving rise to her malpractice claim. Plaintiff opposed both exceptions. Following an August 29, 2022 hearing, the trial court rendered judgment denying Dr. Gates's and Christus Cabrini's exceptions. Dr. Gates then filed an application for supervisory writs, seeking review of the trial court's denial of his exception.

On January 25, 2023, this court granted Dr. Gates's writ, reversed the trial court's ruling, and rendered judgment in favor of Dr. Gates, as follows:

We find that the trial court erred in denying Relator's Peremptory Exception of Prescription. The new allegations raised in Respondent's First Supplemental and Amending Petition were filed more than three years from the date of the alleged medical malpractice and do not relate back to the original petition for damages. *See Warren v. Louisiana Medical Mutual Ins. Co.*, 07-492 (La. 12/2/08), 21 So.3d 186; *Santiago v. Tulane University Hosp. and Clinic*, 12-1095 (La.App. 4 Cir. 4/23/13), 115 So.3d 675. Accordingly, we reverse and set aside the trial court's ruling and enter judgment granting Relator's exception and dismissing Respondent's First Supplemental and Amending Petition.

*Lachney v. Gates*, 22-629 (La.App. 3 Cir. 1/25/23) (unpublished writ ruling).

3

As Plaintiff did not seek review of this ruling by the supreme court, the ruling is final.

Thereafter, Christus Cabrini again filed an exception of prescription, arguing that "any possibility that the non-medical malpractice claims against it related back to the original Petition for Damages have been foreclosed by the dismissal of the claims against Dr. Gates asserted in the First Supplemental and Amending Petition for Damages." In opposition to Christus Cabrini's exception, Plaintiff argued that her claims were not prescribed as they focused "on [Christus Cabrini's] administrative failure to investigate the domestic abuse by Gates, which was in violation of its own bylaws and national standards." She argued that the general code articles on interruption of prescription applied to her claims because administrative negligence sounds in general negligence rather than medical malpractice. Thus, her initial suit against Dr. Gates interrupted prescription such that her administrative negligence claims were not prescribed when she added Christus Cabrini to her suit on September 21, 2020.

Following a May 1, 2023 hearing, the trial court[1] took the matter under advisement. Thereafter, it rendered a judgment, with incorporated written reasons for judgment, on May 15, 2023. In its written reasons, the trial court identified two separate issues to be decided:

> First, it must determine the applicable legal framework for prescription, i.e., whether it should be viewed through the general Civil Code Article 2324(C) or the more specific Louisiana Medical Malpractice Act (LMMA), in particular La. R.S. 40:1231.8(A)(2)(a) and related Louisiana Supreme and Appellate Court decisions, and if prescription has run. Second, the Court must determine whether Christus has a separate designation, as the claim against it is based on administrative negligence and not medical malpractice.

---

[1] This judgment was rendered by Judge Hazel. The previous judgments in this matter were rendered by Judge Patricia E. Koch.

4

Relying on supreme court opinions in *LeBreton v. Rabito*, 97-2221 (La. 7/8/98), 714 So.2d 1221, and *Borel v. Young*, 07-419 (La. 11/27/07), 989 So.2d 42 (on rehearing), the trial court held that the more specific prescriptive period found in La.R.S. 40:1231.8(A)(2)(a), pertaining to medical malpractice claims, superseded the more general provision as to the interruption of prescription for joint tortfeasors in La.Civ.Code art. 2324(C). Thus, as Plaintiff's initial suit was brought under the Louisiana Medical Malpractice Act (LMMA), her second supplemental and amending petition adding claims against Christus Cabrini more than six years after her initial suit was filed had prescribed. The trial court further held that even if Plaintiff had a viable administrative negligence claim against Christus Cabrini, "because of the nature of the initial petition, prescription has run and the claim is prescribed." Based on these findings, the trial court granted Christus Cabrini's exception and dismissed all of Plaintiff's claims against it with prejudice. It is from this judgment that Plaintiff has perfected her appeal.

On appeal, Plaintiff raises one assignment of error: "The trial court committed legal error in granting the exception of prescription."

## OPINION

The law pertaining to the review of an exception of prescription was laid out by this court in *Arton v. Tedesco*, 14-1281, p. 3 (La.App. 3 Cir. 4/29/15), 176 So.3d 1125, 1128, *writ denied*, 15-1065 (La. 9/11/15), 176 So.3d 1043, as follows:

> The exception of prescription is governed by La.Code Civ.P. art. 927. The standard of review of a grant of an exception of prescription is determined by whether evidence was adduced at the hearing of the exception. If evidence was adduced, the standard of review is manifest error; if no evidence was adduced, the judgment is reviewed simply to determine whether the trial court's decision was legally correct. *Allain v. Tripple B Holding, LLC*, 13-673 (La.App. 3 Cir. 12/11/13), 128 So.3d 1278. The party pleading the exception of prescription bears the burden of proof unless it is apparent on the face of the pleadings that the claim is prescribed, in which case the plaintiff must prove that it is not. *Id.*

5

We begin with a review of the substantive laws pertaining to prescription that are applicable here. First, claims sounding in medical malpractice against health care providers are governed by the prescriptive periods set forth in La.R.S. 9:5628(A):

> No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1231.1(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

The provisions of La.R.S. 9:5628, were explained more fully in *Harris v. Breaud*, 17-42, p. 8 (La.App. 1 Cir. 2/27/18), 243 So.3d 572, 578, as follows:

> Louisiana Revised Statute 9:5628 has been referred to as a "tripartite prescription provision," meaning that the statute has three parts. **In re: Medical Review Panel for Claim of Moses**, 2000-2643 (La. 5/25/01), 788 So.2d 1173, 1178. First, a one-year prescriptive period, which follows the same time frame as a traditional tort, is the general rule. **Id.**, 788 So.2d at 1178-79[.] Second, when an injury is not immediate and apparent, there is a discovery exception to the general rule, known as *contra non valentum*, providing that such actions prescribe one year from the date of discovery of the alleged act, omission, or neglect. **Id.** Third, a period of three years has been placed on all claims, regardless of discovery. **Id.** at 1178. Both the one-year and three-year periods set forth in La. R.S. 9:5628 are prescriptive, with the qualification that the *contra non valentem* type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission, or neglect. **Borel v. Young**, 2007-0419 (La. 11/27/07), 989 So.2d 42, 48 (on rehearing).

The LMMA provides a specific rule regarding the effect that the filing of a request for review of a medical malpractice claim against a healthcare provider has on the running of prescription as to joint tortfeasors, whether or not the additional claim sounds in malpractice. Louisiana Revised Statutes 40:1231.8(A)(2)(a) provides, in pertinent part, that "[t]he filing of a request for review of" a malpractice claim "shall suspend the running of prescription against all joint and solidary

6

obligors and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for a review." However, the interruption lasts only until the expiration of ninety days following notification by certified mail to the claimant or his attorney of the issuance of an opinion by the medical review panel. *Id.*

In most other actions outside the scope of the LMMA, prescription is interrupted by the commencement of suit against the obligor in a court of competent jurisdiction and venue. La.Civ.Code art. 3462. A timely filed suit against one joint tortfeasor interrupts prescription as to all joint tortfeasors. La.Civ.Code art. 2324(C). However, in *Borel*, 989 So.2d at 54, the supreme court held "that the more specific provisions of the Medical Malpractice Act regarding suspension of prescription against joint tortfeasors apply in this case to the exclusion of the general code articles on interruption of prescription against joint tortfeasors, and in particular LSA-C.C. art. 2324(C)."

Although Christus Cabrini, as the mover, bears the burden of proving prescription, it is apparent on the face of the pleadings that Plaintiff's claims against Christus Cabrini have prescribed as they were filed more than three years after the date of the alleged malpractice. Thus, the burden shifts to Plaintiff to prove that her claims are not prescribed.

Plaintiff filed four exhibits in support of her opposition to Christus Cabrini's exception: Christus Cabrini's response to Plaintiff's request for admissions and interrogatories; an affidavit by Dr. Susan Abookire; Dr. Abookire's Medical Expert Witness Report; and a supplemental affidavit by Ellen G. Stein, Ph.D.

In its response to Plaintiff's requests for admissions and interrogatories, Christus Cabrini admitted that it "did not initiate an investigation or peer review" of

7

Dr. Gates following his April 19, 2014 arrest. It further admitted that the first surgery Dr. Gates performed following his arrest was on April 21, 2014.

In Dr. Stein's supplemental affidavit, she states:

Dr. Gates' [sic] behavior, as memorialized by Officer Dauzet, clearly outlines a matter of grave concern, both to the victim and the Court, where his ability to effectively address a matter of frustration, quickly escalated to one of annihilation or attempts to extinguish the object of his wrath. Dr. Gates [sic] effort to restrain his victim by placing his body on top of her while pinning her to the floor, left little doubt that he was not willing to stop with "slapping her a few times". His intention, at that point, given his conduct, suggests that he was moving toward more lethal harm. Attempted strangulation is a consistent marker for lethality in domestic violence. When the attempt fails, it remains essential for the Court as well as treatment providers, to regard the offender as continuing to possess a clear and lethal danger to the alleged victim and potentially others in the community if he remains untreated.

In her affidavit, Dr. Abookire, M.D., MPH, FACP, an assistant professor at Harvard Medical School, stated that "[b]y virtue of my training, education, and experience, I am familiar with the hospital standards of care that relate to issues for physicians such as James L. Gates, M[.]D. and I can fairly evaluate the quality of oversight that was provided, and the administrative standard of care." In her report, Dr. Abookire stated that she "was asked to provide an expert opinion as to whether Christus Cabrini Surgery Center met the standard of care in the administrative management of Ms. Lachney's surgeon, Dr. James Gates."

In her summary, Dr. Abookire noted that Dr. Gates was on the medical staff of Christus Cabrini, performing his first surgery there in 2007. She stated that although Christus Cabrini's administrator learned of the domestic incident involving Dr. Gates shortly after it occurred, no investigation into the incident was conducted as there was no question regarding Dr. Gates's competence. Dr. Abookire listed the following Christus Cabrini bylaw:

10.1 Routine Corrective Action

10.1-1 Criteria for Initiation

Any person may provide information to the Administrator about the conduct, performance or competence of the Surgery Center Practitioners. When reliable information indicates a Practitioner with clinical privileges may have exhibited acts, demeanor or conduct, reasonably likely to be: (1) detrimental to patient safety or to the delivery of quality patient care within the Surgery Center; (2) unethical; (3) contrary to the Professional Medical Staff Bylaws, Rules and Regulations or policies and procedures; (4) below applicable professional standards; or (5) disruptive to the operations of the Surgery Center. Corrective action against such Practitioner may be requested by the Medical Director, by a member of the Board, or by a member of the Medical Executive Committee.

If the Medical Executive Committee fails to investigate or take disciplinary action, contrary to the weight of the evidence, the Board may direct the Medical Executive Committee to initiate the investigation or disciplinary action, but only after consultation with the Medical Executive Committee. If the Medical Executive Committee fails to take action in response to that Board direction, the Board may initiate corrective action, but this corrective action must comply with Article X of these bylaws.

Dr. Abookire noted that Dr. Stein's affidavit "referenced the prescribing of several medications directed to serious mental health diagnoses, and that the prescribed medications have potential serious and impairing symptoms."

It was Dr. Abookire's opinion "based upon a reasonable degree of medical certainty," that Christus Cabrini "breached the standard of care by failing to provide the necessary administrative oversight and actions to ensure that Dr. Gates was eligible to continue to have unrestricted privileges to perform surgery and to provide safe, high-quality patient care." She stated that pursuant to the 2014 Joint Commission Comprehensive Accreditation Manual (Joint Commission), the standard of care for evaluating competence required a comprehensive evaluation including consideration of patient care, medical/clinical knowledge, practice-based learning and improvement, interpersonal communication skills, professionalism, and system-based practice. Thus, she stated that it was a breach of the standard of care for a hospital to "ignore professionalism and concerns about patient safety[]"

9

when evaluating a physician's competency. Dr. Abookire stated that the Joint Commission requires hospitals to utilize a "Focused Professional Practice Evaluation[,]" which "calls for an immediate inquiry into events such as occurred with James Gates. An arrest for violent behavior must be investigated. Concern about ongoing violence, mental health, psychiatric stability, or medications that alter behavior must be addressed. Any risk to patient safety must be actively managed."

In finding that Christus Cabrini breached its standard of care, Dr. Abookire stated:

> Christus Cabrini Surgery Center LLC breached the standard of care by failing to follow its own by Bylaws in their response and management of the criminal record of James L. Gates. The Bylaws call for Corrective Action to be initiated by the Board and/or Medical Executive Committee when reliable information exists of concerns as delineated in the 5 elements of the Bylaws 10-1.1. Restricting the interpretation of concerns to a notion of 'competence' that is not affected by an arrest for violent behavior is a breach of the standard of care. Had Christus Cabrini Surgery Center LLC met the standard of care, an inquiry would have been initiated by the Medical Staff Executive Committee and/or the Board. More likely than not, Dr. Gates would not have had ongoing unrestricted, unmonitored, [sic] privileges.

> Christus Cabrini Surgery LLC [sic] exhibited administrative negligence by failing to ensure that James Gates was competent to practice surgery, using a comprehensive approach to competence. Christus Cabrini Surgery [sic] breached the standard of care by failing to ensure a Focused Professional Performance Evaluation, by violating standards for Leadership, and by failing to adhere to its Bylaws. Had Christus Cabrini Surgery LLC [sic] met the standard of care, a thorough inquiry and investigation would have been initiated. Had an investigation been undertaken, Dr. Gates' [sic] surgical privileges would be limited or suspended pending confirmation that his professionalism, behavior, mental health, and medications were consistent with the values of patient safety and high-quality care. The failure to initiate any inquiry or investigation into an episode of violent and criminal behavior represents administrative negligence by Christus Cabrini Surgery LLC [sic].

On appeal, Plaintiff argues that the trial court erred in granting Christus Cabrini's exception of prescription because unlike in *Borel*, which involved a claim of medical malpractice against a healthcare provider, the general code articles on

10

interruption of prescription should apply in this instance as her claim against Christus Cabrini involves "administrative negligence," which falls outside the scope of the LMMA.

After reviewing the evidence, we find no manifest error in the trial court's grant of Christus Cabrini's exception of prescription; however, in doing so we find that the claims alleged by Plaintiff against Christus Cabrini are subject to the prescriptive period contained in La.R.S. 9:5628 as they sound in medical malpractice.

There is no dispute that Christus Cabrini is a qualified health care provider pursuant to La.R.S. 40:1231.1(A)(10). Moreover, as defined in La.R.S. 40:1231.1(13), an act of malpractice "includes all legal responsibility of a health care provider . . . in the training or supervision of health care providers[.]" "Whether a claim sounds in medical malpractice is a question of law reviewed under a *de novo* standard." *Thomas v. Reg'l Health Sys. of Acadiana, LLC*, 19-507, 19-524, p. 8 (La. 1/29/20), 347 So.3d 595, 601.

In *Billeaudeau v. Opelousas General Hospital Authority*, 16-846, p. 16 (La. 10/19/16), 218 So.3d 513, 523, the supreme court stated that "the treatment-related medical decisions and dereliction of skill with which the LMMA is concerned, and for which a hospital can be held liable for 'malpractice,' fall under the 'supervision and training of the health care providers' once they enter the building and engage in the practice of medicine therein." *Billeaudeau* held that a claim of negligent credentialing as it pertains to a hospital's initial credentialing of a physician does not sound in medical malpractice. However, the supreme court, in *Thomas*, 347 So.3d at 602, held that claims involving "negligent re-credentialing necessarily fall within the definition of 'malpractice' under the LMMA because they constitute an 'unintentional tort . . . based on health care or professional services rendered, or

11

which should have been rendered, by a health care provider, to a patient . . . in the training or supervision of health care providers." *Id.* at 602 (alterations in original). The supreme court further held:

> Our holding comports with this court's statement in *Billeaudeau* that "the treatment-related medical decisions and dereliction of skill with which the LMMA is concerned, and for which a hospital can be held liable for 'malpractice,' fall under the 'supervision and training of the health care providers' once they enter the building and engage in the practice of medicine therein." [*Billeaudeau*,] 218 So. 3d at 523. To the extent that plaintiff's allegations against the hospital include the hospital's *initial* credentialing of Dr. Dalal in 1987, we distinguish *Billeaudeau* on its facts.

*Id.*

The supreme court's finding that claims alleging negligent re-credentialing fall under the LMMA was supported "by application of the *Coleman*[2] factors." *Id.* at 604. The supreme court held:

> Our conclusion that the LMMA encompasses the present claims also is supported by application of the *Coleman* factors. First, as to whether the particular wrong is treatment related or caused by a dereliction of professional skill, we note that the allegations in the

---

2 *Coleman v. Deno*, 01-1517 (La. 1/25/02), 813 So.2d 303. The six *Coleman* factors utilized for determining whether a qualified health care provider's conduct qualifies as malpractice under the LMMA are:

1. Whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;

2. Whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;

3. Whether the pertinent act of omission involved assessment of the patient's condition;

4. Whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;

5. Whether the injury would have occurred if the patient had not sought treatment; and

6. Whether the tort alleged was intentional.

*Thomas*, 347 So.3d at 604 nt.5 (quoting *Coleman*, 813 So.2d at 315–16).

petition are treatment related for failure to diagnose a heart condition. Moreover, in light of evidence that LGMC engages in continuous peer review as part of its re-credentialing process, professional skill is a necessary element, and this factor would favor application of the LMMA.

Second, because re-credentialing invokes the professional assessment of a physician's peers, expert medical testimony will be required to determine whether the hospital's conduct in re-credentialing Dr. Dalal fell below the applicable standard of care. This factor also favors application of the LMMA. Third, while the pertinent act of re-credentialing Dr. Dalal did not necessarily involve specific assessment of Mariah's condition, the process involved ongoing review of Dr. Dalal's patient care. Under the fourth factor, credentialing is unquestionably within the scope of activities a hospital is licensed to perform under R.S. 40:2114(E). Fifth, the patient's alleged damages would not have occurred if she did not receive care at LGMC or W & C, thereby satisfying this factor in favor of application of the LMMA. As to the last factor asking whether the tort alleged was intentional, there are no allegations of intentional misconduct. In the instant matter, The [sic] *Coleman* factors weigh in favor of applying the LMMA to the claims presented in this petition.

*Id.* (footnotes omitted).

At the heart of Plaintiff's claim against Christus Cabrini is its failure to restrict Dr. Gates's credentials despite its knowledge of the domestic incident he initiated, which failure led to it not recognizing Dr. Gates's mental condition and the possible effect his prescribed medication could have on his ability to safely practice medicine. As such, this matter does not involve Dr. Gates's initial credentialing as he was first credentialed by Christus Cabrini in 2007. Rather, Plaintiff's allegations concern Christus Cabrini's supervision of Dr. Gates following his initial credentialing as well as its failure to properly supervise physicians already practicing at its facility. She complains of its failure "to implement policies and protocols to address and monitor the fitness of physicians enjoying privileges at its facility[,]" and its failure "to properly credential physicians practicing at its facility[.]" As to Christus Cabrini's actions regarding Dr. Gates, specifically, Plaintiff complains that it failed to recognize his "significant psychiatric/psychological condition" and "the potentially

13

serious and impairing effects" his medication could have on his ability to practice medicine.

Although Plaintiff attempts to avoid the limitations of the LMMA by calling her claims "administrative negligence," we find that the actions she alleges Christus Cabrini failed to take with regard to Dr. Gates and its other practicing physicians fit squarely under its legal responsibility for the "supervision and training of health care providers" practicing at its facility. La.R.S. 40:1231.1(A)(13). "Supervision" is defined as "[t]he series of acts involved in managing, directing, or overseeing persons or projects." Black's Law Dictionary (11th ed. 2019). As the definition of malpractice specifically "includes all legal responsibility of a health care provider . . . in the training or supervision of health care providers," we find that Plaintiff's claims, which focus on Christus Cabrini's failure to manage, direct, or oversee Dr. Gates's practice of medicine, as well as that of its other credentialed physicians, fall under the LMMA.

Despite Plaintiff's and Dr. Abookire's use of the term "administrative" in describing Christus Cabrini's alleged negligence, their entire focus is on Dr. Gates's competency to practice medicine and Christus Cabrini's failure to terminate or restrict his medical privileges. Moreover, the term "administrative" as used in this context is defined as "[o]f, relating to, or involving the work of managing a company or organization[.]" Black's Law Dictionary (11th ed. 2019). In this instance, Plaintiff's claims do not concern the actions Christus Cabrini took in managing its facility. Rather, they concern the actions it took or failed to take in supervising Dr. Gates, a practitioner enjoying privileges at its facility.

This finding is also supported by application of the *Coleman* elements. As to whether Plaintiff's claims are treatment related or caused by a dereliction of professional skill, her allegations against Christus Cabrini specifically arise from its

14

failure to assess Dr. Gates's fitness to perform surgery in the weeks following the domestic attack on his wife, and more specifically, his fitness to perform Plaintiff's June 6, 2014 surgery. Additionally, Christus Cabrini's bylaws allow for routine corrective action against a credentialed health care provider when reliable information indicates that the health care provider "may have exhibited acts, demeanor or conduct, reasonable likely to be" "detrimental to patient safety or to the delivery of quality patient care within the Surgery Center[.]" Rule 10.1-1. Accordingly, we find that Plaintiff's claims against Christus Cabrini relate to medical treatment or the dereliction of professional skill.

We further find that expert medical testimony is required to determine whether the appropriate standard of care was breached in this instance. Plaintiff claims that Christus Cabrini should have assessed Dr. Gates's competency following the domestic incident in light of the medication he was prescribed to address his mental health concerns. In fact, Plaintiff did present expert medical testimony via Dr. Abookire's affidavit and Medical Expert Witness Report regarding whether Christus Cabrini breached the appropriate standard of care. Although Dr. Abookire found that Christus Cabrini breached the standard of care in its administrative management of Dr. Gates, whether Dr. Gates should have retained his credentials following the domestic incident would have required the professional assessment of his peers. Accordingly, this element weighs in favor of Plaintiff's claim falling under the LMMA.

As to the third *Coleman* element, although Christus Cabrini's supervision of Dr. Gates did not involve the assessment of Plaintiff's condition, it was aware of the domestic incident involving Dr. Gates and, according to Dr. Abookire, it failed to ensure that Dr. Gates "was competent to practice surgery, using a comprehensive approach to competence." Again, Plaintiff's own expert points to the conclusion that

15

the claim was one for medical malpractice in that it involved Christus Cabrini's supervision of Dr. Gates and its assessment of his ability to continue to exercise medical privileges at the hospital given his circumstances. This is made even clearer by Dr. Abookire's use of the term "standard of care" when referring to the failures of Christus Cabrini in supervising Dr. Gates.

With regard to the fourth *Coleman* element, we find that Christus Cabrini's alleged failure to investigate Dr. Gates's actions and restrict his privileges falls within the scope of activities that a hospital is licensed to perform pursuant to La.R.S. 40:2114(E).[3] The fifth *Coleman* factor weighs in favor of the LMMA as Plaintiff's injuries would not have occurred if she had not sought treatment from Dr. Gates. Finally, Plaintiff has not alleged that the actions of Dr. Gates or Christus Cabrini were intentional.

After reviewing the *Coleman* factors in light of Plaintiff's allegations, we find that they weigh in favor of finding that her claims against Christus Cabrini fall under the provisions of the LMMA. Based on this finding and the fact that Plaintiff's claims against Christus Cabrini were filed more than three years after the date of the alleged malpractice, we find that her claims against Christus Cabrini have prescribed. La.R.S. 9:9562. Accordingly, the judgment of the trial court is affirmed.

**DECREE**

Based on the foregoing, the judgment of the trial court granting the exception of prescription in favor of Christus Cabrini Surgery Center, L.L.C. is affirmed. The costs of this appeal are assessed against Roxine Lachney.

**AFFIRMED.**

---

[3] Louisiana Revised Statutes 40:2114(E) requires a hospital to "establish rules, regulations, and procedures setting forth the nature, extent, and type of staff membership and clinical privileges, as well as the limitations placed by the hospital on said staff membership and clinical privileges for all health care providers practicing therein."

16